IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| LUCIA CAPRIOTTI | : | CIVIL ACTION |
|---|---|---|
| v. | : | No. 19-3136 |
| RICHARD D. ROCKWELL, et al. | : | |

**MEMORANDUM**

**Juan R. Sánchez, C.J.**                                                                  **January 7, 2020**

Plaintiff Lucia Capriotti brings this action alleging her boss, Defendant Richard D. Rockwell, asked her to commit perjury, and after she refused, he, and the entities he represents, fired her. Capriotti's claims include wrongful discharge in Count I and intentional infliction of emotional distress in Count II. Defendants move to dismiss the entire action pursuant to Federal Rule of Civil Procedure 12(b)(1) and argue this Court lacks subject matter jurisdiction under both the *Colorado River* doctrine and the *Rooker-Feldman* doctrine because of a pending state court action arising from the same set of events as this action. Defendants also move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) because they argue Capriotti has failed to state a claim for wrongful discharge and intentional infliction of emotional distress. Because the Court declines to abstain under the *Colorado River* or *Rooker-Feldman* doctrine, the Court will deny Defendants' motion in part, insofar as Defendants seek to dismiss the entire action. Nonetheless, because Capriotti has failed to state a claim for intentional infliction of emotional distress, the Court will grant in part Defendants' motion and dismiss Count II of the Complaint.

**BACKGROUND**[1]

Capriotti was an employee of Defendant Professional Security Broadband Inc. (PSB) beginning in 2014 until her termination on October 10, 2017. Rockwell is the Chairman of PSB's Board of Directors and the majority shareholder in PSB. Defendants Insperity, Inc., Insperity Holdings, Inc., and Insperity PEO Services, Inc. (collectively, Insperity) became co-employers of Capriotti and other employees of PSB and its subsidiaries in 2015.

In 2017, PSB filed a lawsuit against a former employee, Richard Leighton, because he left PSB and started his own company. Capriotti was a witness in the Leighton case and was set to be deposed. PSB's attorneys therefore met with Capriotti on September 28, 2017, to discuss her deposition testimony. During this meeting, Capriotti truthfully answered all questions.

Later that evening, Rockwell called Capriotti and spoke to her for a total of 82 minutes over two separate calls. During these two calls, Rockwell berated Capriotti for her answers regarding her deposition testimony. Rockwell was frustrated that the answers she provided "were not incriminating of Leighton." Compl. ¶ 23. Rockwell used profanity and threatened Capriotti with litigation if she did not say what he *wanted* her to say. Rockwell also threatened to remove Capriotti from her position at PSB. Rockwell made several other threats and insults, and informed Capriotti that she needed to "fix it." *Id.* ¶¶ 30, 32, 35.

The following day, Rockwell called Capriotti again with PSB's attorney. Rockwell asked how Capriotti intended to fix the problem she had created. Capriotti stated she hoped to contact Leighton and encourage him to settle the matter with PSB. Rockwell was dissatisfied and asked

---

[1] The following facts are taken as true from Capriotti's Complaint, whose "well-pleaded factual allegations" the Court must accept as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The Court also interprets Capriotti's allegations in the light most favorable to her and draws all inferences in her favor. *See Moore v. Angie's List, Inc.*, 118 F. Supp. 3d 802, 807 (E.D. Pa. 2015).

Capriotti to write down everything she could remember regarding the issues with Leighton. Rockwell's request was allegedly to intimidate and threaten Capriotti into giving false information and perjuring herself in her deposition. During the conversation, Rockwell again used profanity and insulted Capriotti. Nonetheless, Capriotti complied with the request to write down the facts regarding Leighton and sent it to Rockwell around 3:00 p.m. that day.

Two days later, on October 1, 2017, Capriotti called Insperity's human resources specialist and reported the harassment and threats from Rockwell. She also reported she suffered extreme anxiety and stress as a result. After Capriotti reported Rockwell, the harassment intensified.

A few days later, Capriotti again answered questions from PSB's attorney regarding the litigation with Leighton and her deposition testimony. Rockwell again called Capriotti and threatened her. He specifically said at one point, "I'm going to go kill your children in their sleep." Compl. ¶ 46. Capriotti ultimately stated she would not perjure herself for PSB's benefit and she was ultimately terminated on October 10, 2017. Capriotti alleges she was fired in retaliation for her refusal to perjure herself in her deposition.

After Capriotti was fired, on October 25, 2017, Unlimited Technologies, Inc.—a wholly-owned subsidiary of PSB—filed suit against Capriotti in the Chester County Court of Common Pleas. Unlimited asserted claims for breach of contract, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and civil conspiracy. In response to these claims, Capriotti asserted claims for wrongful termination, abuse of process, and intentional infliction of emotional distress. She also attempted to join the Defendants in this case to the Chester County case.

The Chester County Court dismissed Capriotti's claims against the Defendants in this case, for failure to properly join them in compliance with Pennsylvania rules of civil procedure, but allowed her counterclaims against Unlimited to remain. Defs.' Ex. B (August 3, 2018, Order). The

counterclaims against Unlimited are still pending and the Chester County case is set for trial on January 20, 2020.

After Defendants were dismissed from the Chester County case, Capriotti filed this action on July 18, 2019. She alleges one count for wrongful discharge, and a second count for intentional infliction of emotional distress against all Defendants. Defendants then moved to dismiss the Complaint. Defendants argue (1) this Court should abstain from exercising jurisdiction under the *Colorado River* doctrine because of the pending Chester County case; (2) this Court should abstain from exercising jurisdiction under the *Rooker-Feldman* doctrine because this case is just an appeal of the Chester County Court's dismissal of Defendants; and (3) Capriotti has failed to state a claim for which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

**DISCUSSION**

Defendants first move to dismiss Capriotti's Complaint on the basis of abstention pursuant to Federal Rule of Civil Procedure 12(b)(1). Under this rule, a court must grant a motion to dismiss if it lacks subject matter jurisdiction to hear a claim. *See Nat. Collegiate Athletic Ass'n v. Corbett*, 25 F. Supp. 3d 557, 563 (M.D. Pa. 2014) (citing Fed. R. Civ. P. 12(b)(1)). The Court, however, has jurisdiction over this action pursuant to 42 U.S.C. § 1332.

Rather than dismiss pursuant to Rule 12(b)(1), and as the Third Circuit recognizes, "dismissal without retention of jurisdiction on abstention grounds is in the nature of a dismissal under Federal Rule of Civil Procedure 12(b)(6)." *See Heritage Farms, Inc. v. Solebury Twp.*, 671 F.2d 743, 745 (3d Cir. 1982). Under Rule 12(b)(6), the Court relies on the Complaint, attached exhibits, and matters of public record, including those of other judicial proceedings. *See Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2008).

Defendants first argue the Court should abstain from exercising jurisdiction under the *Colorado River* doctrine because the pending Chester County case is a "parallel proceeding." Defendants argue the cases are parallel because the claims in this action are identical to the claims against Unlimited in the Chester County case. The Court, however, will not abstain under the *Colorado River* doctrine because this case and the Chester County case are not parallel and no extraordinary circumstances merit abstention.

The *Colorado River* doctrine allows a federal court to abstain, either by staying or dismissing a pending federal action, when there is a parallel ongoing state court proceeding. *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976). The doctrine is narrowly applied because the "federal courts have a strict duty to exercise the jurisdiction that is conferred to them by Congress." *Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.*, 571 F.3d 299, 307 (3d Cir. 2009) (quoting *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706 (1996)). Whether abstention is appropriate is a two-part inquiry: (1) whether there is a parallel state proceeding that raises substantially identical claims and nearly identical allegations and issues, and (2) whether extraordinary circumstances exist to merit abstention. *See Blank River Servs. Inc. v. Towline River Serv., Inc.*, 395 F. Supp. 3d 589, 596 (E.D. Pa. 2019) (citing *Nationwide Mut. Fire Ins. Co.*, 571 F.3d at 307–08).

This case and the Chester County case are not parallel because they do not involve the same parties, even though they do involve essentially the same claims. Under the parallel state proceedings inquiry, the Third Circuit has stated, "cases are parallel when they involve the same parties and claims." *Kelly v. Maxum Specialty Ins. Grp.*, 868 F.3d 274, 285 (3d Cir. 2017). "Parallel proceedings are those that are truly duplicative, that is, when the parties and the claims are identical, or at least effectively the same." *Id.* (internal quotation marks and citations omitted).

5

While the parties and the claims need not be strictly identical, "the parties involved [must be] closely related and that the resolution of an issue in one [case must] necessarily settle the matter in the other [case]." *Id.* at 284 n. 8.

Capriotti asserts essentially the same claims here as she does in the Chester County case. In the Chester County case, Capriotti asserts three counterclaims: wrongful discharge, abuse of process, and intentional infliction of emotional distress. In this case, Capriotti asserts two claims: wrongful discharge and intentional infliction of emotional distress. The counterclaims in Chester County also arise from the same set of facts that give rise to the claims in this case.

The Chester County case and this case do not, however, have identical parties. The defendant to Capriotti's counterclaims in Chester County is Unlimited—which is not a party in this case. Defendants in this case are Rockwell, PSB, and Insperity—none of which is a party to the Chester County case.

The relationship between the parties in the Chester County case and this case is unclear, but they are not essentially identical. Rockwell is an individual who works for PSB, not Unlimited. Unlimited is a subsidiary of PSB, but it is not identical to PSB. In addition, Insperity is a wholly distinct company from Unlimited or PSB. While all of the defendants may exercise some employment control over Capriotti, this does not make them so closely related as to be essentially identical.[2] *See Kelly*, 868 F.3d at 287 (finding proceedings not parallel when parties were different).

---

[2] It is unclear whether Capriotti was employed by Unlimited, PSB, Insperity or some combination of the three. This issue is before the Chester County Court. If that Court determines Capriotti was an employee of Unlimited, and not an employee of PSB or Insperity, this determination could arguably dispose of Capriotti's claims in this case. On the other hand, if it finds that Capriotti is an employee of PSB and Insperity, then Capriotti may need this forum to proceed on her claims.

Even presuming the cases are parallel, this case lacks the extraordinary circumstances warranting abstention. *See Nationwide Mut. Fire Ins. Co.*, 571 F.3d at 308 (presuming parallelism and finding factors did not present extraordinary circumstances warranting abstention). When a case is parallel, a court may only exercise *Colorado River* abstention in extraordinary circumstances. *Id.* In determining the existence of those circumstances, the court should consider six factors:

> (1) Which court first assumed jurisdiction over property [in an in rem case];
> (2) The inconvenience of the federal forum;
> (3) The desirability of avoiding piecemeal litigation;
> (4) The order in which jurisdiction was obtained;
> (5) Whether federal or state law controls; and
> (6) Whether the state court will adequately protect the interests of the parties.

*Spring City Corp. v. Am. Bldgs. Co.*, 193 F.3d 165, 171 (3d Cir. 1999). Ultimately, "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule." *Colorado River*, 424 U.S. at 813.

The Court is not persuaded the factors weigh in favor of abstention. Only one of the factors, the order of jurisdiction, weighs slightly in favor of abstention. The remaining factors are either neutral or weigh against abstention.

The first factor, which court assumed jurisdiction over property first, is neutral; there is no property at issue in this case. The second factor, the inconvenience of the federal forum, is also neutral, but may weigh slightly against abstention. Although Defendants assert the federal forum is inconvenient because all Defendants reside outside of the state, the Court finds this unpersuasive considering the Chester County Courthouse (the only other applicable forum) is approximately 35 miles from this Court and is well within the district. *See Flint*, 234 F. Supp. 2d at 513 (finding distance from Chester County Courthouse did not create inconvenience substantial enough to favor abstention). Therefore, the Court finds this factor, if relevant at all, weighs slightly against

7

abstention. *See Blank River Servs., Inc. v. Towline River Serv., Inc.*, 395 F. Supp. 3d 589, 599 (W.D. Pa. 2019) (finding the two relevant forums in the same geographic area, weighing against abstention).

The third factor considers the desirability to avoid piecemeal litigation. Because there are two cases arising from the same set of events, there is naturally the potential for some piecemeal litigation. Nevertheless, even to avoid piecemeal litigation, abstention is appropriate only when there is a strong federal policy against such litigation. *See Spring City Corp.*, 193 F. 3d at 172.

Defendants have pointed to no federal policy against piecemeal litigation in this context. They argue only that the risk of inconsistent rulings in this Court and in the Chester County case weigh in favor of abstention. This argument is unpersuasive considering "[t]he general rule regarding simultaneous litigation of similar issues in both state and federal courts is that both actions may proceed until one has come to judgment, at which point that judgment may create a res judicata or collateral estoppel effect on the other action." *Univ. of Md. at Balt. v. Peat Marwick Main & Co.*, 923 F.2d 265, 275 (3d Cir. 1991). This general rule establishes that "*Colorado River* abstention must be grounded on more than just the interest in avoiding duplicative litigation." *Spring City Corp.*, 193 F.3d at 171–72. Because Defendants' argument on this factor appears to be based solely on avoiding duplicative litigation, the Court finds this factor does not weigh in favor of abstention.

The fourth factor, the order in which jurisdiction was obtained, weighs slightly in favor of abstention. This factor should "not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 21 (1983). The Chester County case was initiated first in October 2017. Also, the parties have engaged in significant discovery and are prepared to

go to trial in January 2020. This action, on the other hand, has only proceeded to the pleadings stage.

At oral argument, the parties agreed that the remaining discovery in this action is minimal because the claims and discovery in the Chester County case overlap. According to Capriotti, she will only seek depositions of officers of Insperity. Defendants stated they likely would not seek any other discovery in this case. The Chester County case is still in discovery and there will likely be expert discovery and motions for the claims Unlimited asserts against Capriotti. Based on these facts, this factor weighs in favor of abstention, although only slightly due to the overlapping discovery.

The fifth factor, whether state or federal law controls, is neutral. "[A]bstention cannot be justified merely because a case arises entirely under state law." *Ryan v. Johnson*, 115 F.3d 193, 199 (3d Cir. 1997). The two state law claims at issue here, wrongful termination and intentional infliction of emotional distress, are generic and do not involve complex or novel state law issues. Defendants therefore do not argue these state law issues are "so intricate and unsettled that resolution in the state courts might be more appropriate." *Id.* at 200. Defendants merely argue the source of law is identical in the Chester County case and this case. However, run-of-the-mill state law claims like those at issue here do not weigh in favor of abstention. *See, e.g.*, *U.S. Claims, Inc. v. Smolar*, 574 F. Supp. 2d 487, 490 (E.D. Pa. 2008) (finding run-of-the-mill state law claims alone insufficient to favor abstention).

The final factor, whether the state law courts can adequately protect the parties' rights, is also neutral. "[T]he question whether parties' interests are protected is only relevant when they are not; that is, when the state court is adequate, this factor carries little weight." *Spring City Corp*, 193 F.3d at 172 (internal quotation marks and citations omitted). In Defendants' motion, they argue

"the state court will adequately protect the rights of the parties." Defs.' Br. in Supp. of Mot. to Dismiss 6. Although the Court agrees Chester County court can adequately protect the parties' rights, this fact does not weigh in favor of abstention. *See Ryan*, 115 F.3d at 200 ("When the state court is adequate . . . the factor carries little weight.").

Most of the six *Colorado River* factors are relatively neutral or weigh against abstention. The factor that does favor abstention does so only slightly. In the balancing of these factors, Defendants have not demonstrated this case presents the "exceptional circumstances" warranting abstention. Considering the strong presumption of exercising jurisdiction over this case, the Court declines to abstain under the *Colorado River* doctrine. Therefore, the Court will deny Defendants' motion on this ground. To uphold the policy of conserving judicial resources and avoiding duplicative litigation, and because the Chester County case appears to be proceeding quickly, the Court will establish procedures that will minimize the duplication of effort in this case. *See Spring City Corp.*, 193 F.3d at 173 (holding *Colorado River* abstention unwarranted and remanding to district court to implement procedures to avoid duplicative litigation).

Defendants next argue this Court is without jurisdiction under the *Rooker-Feldman* doctrine, which prevents litigants from, essentially, appealing a state court decision in federal court. Defendants point to the Chester County Court's order dismissing Defendants from the Chester County case and assert Capriotti's claims in this Court are merely an appeal of that order. This argument is meritless.

The *Rooker-Feldman* doctrine "precludes lower federal court jurisdiction over claims that were actually litigated or inextricably intertwined with adjudication by a state's courts." *Desi's Pizza, Inc. v. City of Wilkes-Barres*, 321 F.3d 411, 418 (3d Cir. 2003). For the *Rooker-Feldman* doctrine to apply, four requirements must be met: (1) the federal plaintiff lost in state court, (2) the

plaintiff complains of injuries caused by the state court judgment, (3) the judgment was rendered before the federal suit was filed, and (4) the plaintiff is inviting the district court to review and reject the state judgment. *Id.* at 166.

In this case, it is clear the *Rooker-Feldman* doctrine does not apply because Capriotti did not lose in state court, Capriotti's injury was not caused by the state court's decision dismissing the Defendants, and she is not inviting the Court to review or reject this decision. First, Capriotti did not lose the state court case because the state court dismissed Defendants for procedural reasons and Capriotti was free to refile her claims. The Chester County Court dismissed Defendants because Capriotti did not properly join them under the applicable Pennsylvania Rules of Civil Procedure. Although Defendants were dismissed, the parties do not dispute that Capriotti could have reasserted the claims against Defendants in the Chester County case. *See United Nat. Ins. Co. v. M. London, Inc.*, 487 A.2d 385, 395 (Pa. Super. Ct. 1985) (concluding court should grant leave to defendants to amend a counterclaim to reflect the proper parties because the dismissal "was more of a procedural ruling than a substantive decision on the merits of the claims raised"). The merits of Capriotti's claims in this case have therefore not been actually litigated. *See Whiteford v. Reed*, 155 F.3d 671, 674 (3d Cir. 1998) ("[T]his court has consistently held that where a state action does not reach the merits of a plaintiff's claims, then *Rooker-Feldman* does not deprive the federal court of jurisdiction." (internal citations omitted)).

Second, Capriotti does not complain of injuries created by the Chester County Court in dismissing Defendants from that case. When a plaintiff asserts injury caused by the defendant's actions and not by the state court judgment, *Rooker-Feldman* is not a bar to federal jurisdiction. *See Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 167 (3d Cir. 2010). If the injury existed before the state court proceedings, then it likely could not have been caused by

11

those proceedings. *See id.* Capriotti's claims are premised on Defendants' conduct related to her termination. Her wrongful termination claim is premised on her allegation that Defendants fired her because she refused to perjure herself. Her intentional infliction of emotional distress claim is likewise premised on the emotional harm she alleges as the result of this same behavior. Her injuries relating to both of these claims existed at or around the time she was fired. These injuries therefore existed before the Chester County Court dismissed Defendants from the case, and are not caused by the order that dismissed Defendants. Capriotti's injuries in this case, thus, do not arise from the Chester County Court's dismissal of Defendants.

Finally, although the order dismissing Defendants occurred before this case was filed, Capriotti does not invite the Court to review and reject the Chester County Court's order dismissing Defendants on procedural grounds. In this case, the merits of Capriotti's claims of wrongful discharge and intentional infliction of emotional distress are at issue. Therefore, any decision on the merits of Capriotti's claims in this case would not render the Chester County Court's decision, premised on improper joinder, erroneously entered. *See Desi's Pizza, Inc.*, 321 F.3d at 421 (stating a plaintiff's relief is inextricably intertwined with an issue adjudicated by a state court, under the *Rooker-Feldman* doctrine, "when in order to grant the federal plaintiff the relief sought, the federal court must determine that the state court judgment was erroneously entered"). Capriotti does not suggest otherwise and Defendants do not argue that the state court's order addressed the merits or had a preclusive effect. *See Great W. Mining & Mineral Co.*, 615 F.3d at 170 (stating, at the final step of the *Rooker-Feldman* analysis, federal court must give the same preclusive effect to a state-court judgment as another state court would give).

Because three of the four *Rooker-Feldman* factors are not met, and all four factors must be met for the doctrine to apply, the Court will deny Defendants' motion on this ground. *See id.* at

167 ("When . . . a federal plaintiff asserts injury caused by the defendant's actions and not by the state-court judgment, *Rooker-Feldman* is not a bar to federal jurisdiction.").

Defendants' final argument in this motion asserts Capriotti has failed to state a claim for which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). In this case, Capriotti asserts two counts: wrongful discharge and intentional infliction of emotional distress. Capriotti has sufficiently stated a claim for wrongful discharge, but she has failed to state a claim for intentional infliction of emotional distress. The Court will address each count in turn.

To withstand a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the facts pleaded "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. In evaluating a Rule 12(b)(6) motion, a district court must separate the legal and factual matter elements of the plaintiff's claims. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The Court must then "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679). The Court must accept all well-pleaded allegations as true and draw all reasonable inferences in Capriotti's favor. *See Pearson v. Sec'y Dep't of Corr.*, 775F.3d 598, 604 (3d Cir. 2015).

Capriotti has adequately pled her wrongful termination claim because she alleges she was terminated when she refused Rockwell's request to perjure herself. Pennsylvania courts have long recognized that an employer may terminate an employee for any reason absent a contractual provision to the contrary. *See Weaver v. Harpster*, 975 A.2d 555, 562 (Pa. 2009). There are, however, exceptions to this general rule when "discharges of at-will employees would threaten

clear mandates of public policy." *Id.* at 563 (citation omitted). Three categories exist where a violation of public policy has consistently been held to support a claim for wrongful discharge: (1) requiring an employee to commit a crime, (2) preventing an employee from complying with a statutorily imposed duty, and (3) discharging an employee when specifically prohibited from doing so by statute. *See Mikhail v. Pa. Organization for Women in Early Recovery*, 63 A.3d 313, 317 (Pa. Super. Ct. 2013).

Pennsylvania recognizes perjury as a crime. Specifically, "[a] person is guilty of perjury . . . if in any official proceeding he makes a false statement under oath . . . when the statement is material and he does not believe it to be true." 18 PA. CONS. STAT. AND CONS. STAT. ANN. § 4902(a). If an employer requests an employee to commit perjury, and the employee is terminated for his or her refusal, then the termination would violate the public policy of the Commonwealth in requiring an employee to commit a crime. *See Quint v. Thar Process, Inc.*, No. 11-116, 2011 WL 4345925, at *12 (W.D. Pa. Sep. 15, 2011) (citing *Reuther v. Fowler & Williams, Inc.*, 386 A.2d 119, 121–22, n.6 (Pa. Super. Ct. 1978)).

In the Complaint, Capriotti alleges she was terminated because she refused to perjure herself in her upcoming deposition in PSB's litigation with Richard Leighton. Capriotti makes several factual allegations in which Rockwell berated her for her truthful answers to questions "because they were not incriminating of Leighton." Compl. ¶ 23. Rockwell threatened Capriotti and stated she would be the target of litigation "if she did not say what he *wanted* her to say." Compl. ¶ 25. Capriotti also told Rockwell "she could not change the facts" and in response Rockwell stated she could change her story. Compl. ¶ 47. Capriotti told Rockwell she "can't make up stuff. [She] can't make up things to hurt Leighton" and Rockwell responded with anger. Compl. ¶¶ 49–50.

These factual allegations, viewed in the light most favorable to Capriotti and drawing all inferences in her favor, sufficiently allege Rockwell requested Capriotti perjure herself in her upcoming deposition for the litigation with Leighton. Capriotti further alleged she refused to comply with Rockwell's request and was terminated for her refusal. Because terminating an employee for refusal to commit a crime, including perjury, violates the Commonwealth's public policy, Capriotti has sufficiently stated a claim for wrongful discharge.[3]

Despite these allegations, Defendants argue the Complaint fails to state a claim for wrongful discharge because: (1) it does not allege the specific falsehoods Rockwell wanted Capriotti to testify to; (2) it does not specifically state that Rockwell directly said Capriotti must commit perjury; and (3) it does not state when Capriotti was scheduled to be deposed. Defendants also argue that Rockwell is not a proper defendant for the wrongful discharge claim. None of these arguments is persuasive.

Capriotti is not required to allege specific falsehoods or direct statements by Rockwell demanding she commit perjury. The factual allegations detailed above sufficiently support the inference that Rockwell attempted to have Capriotti perjure herself in order for her to keep her job. *See* Compl. ¶¶ 23–29 (alleging facts of telephone conversation in which Rockwell threatened to "remove Capriotti from her position as Vice President of Human Resources"). Defendants argue that these facts support an alternative inference: "Rockwell believed that Capriotti was lying and

---

[3] Defendants argue that a "bald reference to a violation of a federal regulation, without any more articulation of how the public policy of this Commonwealth is implicated, is insufficient to overcome the strong presumption in favor of the at-will employment relationship." *McLaughlin v. Gastrointestinal Specialists, Inc.*, 750 A.2d 283, 290 (Pa. 2000). Defendants' reliance on this case is misplaced. In *McLaughlin*, there was a question of whether a violation of a federal regulation implicated the policy of the Commonwealth. Although the bald reference to the federal regulation was insufficient to show a violation of public policy in *McLaughlin*, the case law clearly states asking an employee to commit a crime violates the Commonwealth's public policy.

15

wanted her to tell the truth." Defs.' Br. in Supp. of Mot. to Dismiss 10. Even if this is one possible interpretation of Cappriotti's allegations, the Court must choose the interpretation most favorable to Capriotti. *See Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 790 (3d Cir. 2016). Under this standard, the facts alleged show Capriotti told the truth to PSB's lawyers, Rockwell berated her for her truthful responses, Capriotti told Rockwell she was telling the truth, and Rockwell told Capriotti she needed to change her answers to (1) incriminate Leighton, (2) say what he *wanted* her to say, (3) be "damning enough", and (4) concoct false information. *See* Compl. ¶¶ 23, 25, 33–34. The Court can draw the inference that Rockwell asked Capriotti to commit perjury in her upcoming deposition.

Capriotti was also not required to allege when she was supposed to testify at her deposition to support her wrongful discharge claim. Capriotti alleged she was to be deposed in the litigation with Leighton. She alleged she met with PSB lawyers to discuss her testimony. She alleged Rockwell asked her to change her answers in preparation for the deposition. There is no question the litigation with Leighton in fact existed. The absence of the specific date and time of Capriotti's deposition in the Complaint does not create a deficiency in her claim for wrongful discharge. *See Schuchardt v. President of the United States*, 839 F.3d 336, 347 (3d Cir. 2016) ("[T]he Supreme Court also expressly disavowed the requirement that a plaintiff plead specific facts." (internal quotations and citations omitted). The allegations in the Complaint sufficiently allege and allow the Court to infer (1) Capriotti was to be deposed under oath in the litigation with Leighton, (2) Rockwell asked her to perjure herself when she was ultimately deposed, (3) Capriotti refused to perjure herself, and (4) she was terminated as a result.

Finally, Capriotti can bring her wrongful discharge claim against Rockwell. Under Pennsylvania law it is unclear whether a wrongful termination claim can be asserted against a

16

defendant, who was not the plaintiff's direct employer, in his or her personal capacity. *Parker v. Sch. Dist. of Phila.*, 346 F. Supp. 3d 738, 751 (E.D. Pa. 2018) (citing *Medley v. SugarHouse HSP Gaming, L.P.*, No. 12-6284, 2013 WL 1157349, at *4 (E.D. Pa. Mar. 21, 2013)).[4] When courts have recognized such a claim, they have only done so where the complaint alleged that the individual defendant acted in a personal capacity rather than corporate capacity. *See id.* An individual acts in a personal capacity if the individual has some personal orchestration of the plaintiff's termination or personally asks the plaintiff to partake in a crime and then fires the plaintiff upon refusal. *See Medley*, 2013 WL 1157349, at *4. "In essence, the malfeasance would need to be motivated by personal interest, and thus fall outside the scope of an individual's corporate duties." *Id.*

Here, Capriotti appropriately alleges that Rockwell acted in his personal capacity. The Complaint's allegations are primarily about Rockwell's conduct towards Capriotti and his involvement in her ultimate termination. Capriotti's claim against Rockwell is not based on a supervisory theory of liability. Capriotti alleges that for "any actions having to do with Capriotti's employment with PSB, Rockwell acted *on behalf of himself*, PSB and Insperity." Compl. ¶ 15 (emphasis added). As discussed above, the Court can infer that Rockwell, over multiple

---

[4] In *Medley*, the court cited to several cases showing the lack of clarity as to whether an individual defendant can be liable for wrongful discharge. *Compare McGuire v. Palmerton Hosp.*, No. 12–1762, 2012 WL 5494924, at *5 (M.D. Pa. Nov. 13, 2012) (finding no wrongful termination claim exists against defendant in individual capacity), *and Hrosik v. Latrobe Steel Co.*, No. 94–1361, 1995 WL 456212, at *6 (W.D. Pa. Apr. 25, 1995) ("A wrongful discharge claim exists only against an employee's employer."), *with Brennan v. Cephalon, Inc.*, No. 04–3241, 2005 WL 2807195, at *13, (D.N.J. Oct. 25, 2005) (finding wrongful termination claim against individuals possible if actions were taken in individual as opposed to corporate capacity), *and DeMuro v. Phila. Housing Auth.,* No. 98–3137, 1998 WL 962103, at *5 (E.D. Pa. Dec.22, 1998) (allowing wrongful termination claim against individual to proceed, but dismissing on other grounds). Ultimately, the court allowed the claim to proceed against one individual defendant but dismissed the claim on other grounds. *See Medley*, 2013 WL 1157349, at *4–5.

conversations, personally asked or attempted to have Capriotti commit perjury. Capriotti has also alleged Rockwell called her multiple times, threatened her and her children, and stated "people should know not to mess with him." Compl. ¶ 29. Rockwell allegedly informed Capriotti he would "destroy her," remove her from her position at PSB, and make sure "no one on the management team trusted her." *Id.* ¶¶ 28–29. These allegations, although related to a corporate issue, i.e. the Leighton litigation, adequately show Rockwell acted in his personal capacity. This conduct, of course, overlaps with Rockwell acting in his corporate capacity. The Court can infer, however, from the Complaint's detailed quotes from Rockwell and his conduct towards Capriotti, that he was motivated by personal interests. Reading the Complaint in the light most favorable to Capriotti, it is plausible that Rockwell acted in a personal capacity. The Court will therefore deny Defendants' motion on this basis. *See Medley*, 2013 WL 1157349, at *4 (denying motion to dismiss by individual defendant because plaintiff sufficiently alleged the individual was plaintiff's supervisor, was directly involved in plaintiff's termination, and retaliated against plaintiff).

On Capriotti's wrongful discharge claim, she has sufficiently alleged facts to show her termination violated the public policy of the Commonwealth. *See Quint*, 2011 WL 4345925, at *12 (citing cases where plaintiff survived motion to dismiss by alleging defendant terminated plaintiff for refusal to commit a crime or to violate a law). She has also alleged sufficient facts to bring a claim against Rockwell in his personal capacity. Capriotti has thus stated a wrongful discharge claim for which relief can be granted and the Court will deny Defendants' motion on this ground.

Turning to the intentional infliction of emotional distress claim, Capriotti has failed to state a claim. A claim for intentional infliction of emotional distress arises when one's acts constitute extreme and outrageous conduct, which intentionally inflicts severe emotional distress on another person. *See Williams v. U.S. Airways, Inc.*, No. 06-4797, 2007 WL 2667981, at *1 (E.D. Pa. Sept.

18

5, 2007). Four elements are required: (1) the conduct must be intentional or reckless, (2) the conduct must be extreme and outrageous, (3) the conduct must cause emotional distress, and (4) the distress must be severe. *See id.* at *2. To state a claim, the plaintiff must also allege physical injury. *See Rolla v. Westmoreland Health Sys.*, 651 A.2d 160, 163 (Pa. Super. Ct. 1994). Symptoms of severe depression, nightmares, stress and anxiety, requiring psychological treatment, and ongoing mental, physical, and emotional harm sufficiently state physical harm or injury to sustain causes of action for infliction of emotional distress. *Corbett v. Morgenstern*, 934 F. Supp. 680, 684–85 (E.D. Pa. 1996).

Capriotti has not sufficiently stated a claim because she has alleged no physical injury. In her Complaint, she merely alleges her emotional distress, anxiety, and stress; but she does not allege any actual injury, physical or otherwise. *See Rolla*, 651 A.2d at 163 (requiring physical injury due to emotional distress for both negligent and intentional infliction of emotional distress); *cf. Williams*, 2007 WL 2667981, at *3 n.3 (denying motion to dismiss because plaintiff alleged "she has suffered severe emotional distress, pain, anguish, humiliation, and embarrassment, and *injury* resulting from her emotional distress"). Therefore, the Court will grant Defendants' motion and dismiss Count II of the Complaint with prejudice.[5]

**CONCLUSION**

In sum, neither the *Colorado River* nor the *Rooker-Feldman* doctrines apply in this case and the Court denies Defendants' motion on these grounds. Under Federal Rule of Civil Procedure

---

[5] The Court will not grant Capriotti leave to amend the Complaint to cure her failure to allege an injury. At oral argument, counsel for Capriotti stated Capriotti did not suffer any injury other than emotional distress. Therefore, the Court finds any amendment to the Complaint would be futile and will not grant leave. *See Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004) ("[I]f a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile.").

19

12(b)(6), Capriotti has sufficiently stated a claim for wrongful discharge, but has not stated a claim for intentional infliction of emotional distress. Accordingly, the Court will grant in part and deny in part Defendants' motion insofar as the Court will dismiss Count II of the Complaint alleging intentional infliction of emotional distress.

BY THE COURT:

 /s/  Juan R. Sánchez
Juan R. Sánchez, C.J.