IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LUCIA CAPRIOTTI | : | CIVIL ACTION |
| | : | |
| v. | : | No. 19-3136 |
| | : | |
| RICHARD D. ROCKWELL, et al. | : | |

## MEMORANDUM

**Juan R. Sánchez, C.J.**                                          **November 19, 2020**

Plaintiff Lucia Capriotti brings this action alleging her boss, Defendant Richard D. Rockwell, asked her to commit perjury and after she refused, he, and the entities he represents, fired her. Defendants Rockwell, Professional Security Broadband, Inc. (PSB), Insperity, Inc., Insperity Holdings, Inc., and Insperity PEO Services, L.P. (collectively Insperity), move for summary judgment pursuant to Federal Rule of Civil Procedure 56. The Court will deny the motion in part and grant the motion in part. Because there is a genuine dispute as to the material fact of whether Rockwell asked Capriotti to commit perjury and fired her because she refused, the Court will deny the motion. However, because Capriotti has failed to produce evidence showing Rockwell acted on Insperity's behalf or Insperity itself asked her to commit perjury, the Court will grant Defendants' motion insofar as judgment will be entered in favor of Insperity only.

## FACTS[1]

PSB is a holding company for Unlimited Technology, Inc. PSB hired Capriotti as an at-will employee in 2014. Insperity, a human resources outsourcing company, entered into a Client

---

[1] In determining whether to grant summary judgment, the court "must view the facts in the light most favorable to the non-moving party, and must make all reasonable inferences in that party's favor." *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005). Except where noted, the facts herein are undisputed.

Services Agreement with PSB in 2015 and became Capriotti's co-employer.[2] During the course of Capriotti's employment, Rockwell served as the Chairman of PSB's Board of Directors and the majority shareholder of PSB. Capriotti worked as the Vice President of Human Resources for PSB until Rockwell fired her on October 10, 2017.

Unlimited's best salesman Richard Leighton and his colleague Charlie Von Stetten had a close relationship with Unlimited's biggest customer, The Home Depot. *See* Capriotti Dep. 109:1–13. In 2016, Leighton told Capriotti he intended to leave Unlimited to create his own company, DTS, and stated he believed he could get out of his non-compete agreement with Unlimited. *See id.* at 82:16–22. Capriotti also learned Leighton offered Von Stetten a job at DTS while they were both still employed by Unlimited. *Id.* at 113:7–12. Capriotti chose not to tell Rockwell about Leighton because Leighton and Rockwell had a contentious relationship. *See id.* at 83:11–20. Capriotti believed that, had she told Rockwell about Leighton, the relationship would have blown up and Leighton would have left the company. *See id.* Capriotti determined it was more beneficial to keep Leighton's efforts quiet to avoid Unlimited losing the business with The Home Depot. *See id.*

In September 2016, Leighton left Unlimited. That same month, while still working for PSB, Capriotti helped Leighton apply for insurance for DTS. Capriotti used her own DTS email address and a laptop and cell phone Leighton provided her. *See, e.g.*, *id.* at 50:15–22. Capriotti also received checks from Leighton to pay for certain items on DTS's behalf.

In 2017, Unlimited filed a lawsuit against Leighton because he created DTS while still employed with Unlimited and for usurping the business opportunity with The Home Depot.

---

[2] Only Defendant Insperity PEO Services, L.P. is a party to the Client Services Agreement. *See* Pl.'s Ex. C, ECF No. 46-3.

Rockwell believed Capriotti and Von Stetten helped Leighton create his new business. *See* Rockwell Dep. 49:11–51:11. On February 28, 2017, Rockwell, Unlimited's CEO John Hopkins, PSB's General Counsel Jeremy Reich, and Unlimited's Vice President Brent Franklin held separate meetings with Von Stetten and Capriotti regarding the Leighton litigation. They first met with Von Stetten, who admitted his involvement with DTS and apologized. *See id.* at 57:7–8.

Rockwell, Hopkins, Reich, and Franklin then met with Capriotti and videotaped the discussion. In the meeting, Rockwell told Capriotti he discovered she had a DTS email address. *See* Capriotti Dep. 39:6–8. Capriotti told the executives the email address was no longer valid and it was only used to help Leighton get insurance for his new company. *See id.* at 39:16–19. She admitted her involvement with Leighton was a reflection of bad judgment. *See id.* at 64:15–19. Capriotti did not mention the cell phone, laptop, or checks she received from Leighton.

Rockwell believed Capriotti was dishonest during the February 2017 meeting. *See* Rockwell Dep. 54:3–56:6. After Rockwell asked her what she thought he should do, Capriotti responded with "let me go." Capriotti Dep. 65:15–24. Rockwell nonetheless retained Capriotti but placed her on suspension after the meeting. *See* Rockwell Dep. 62:13–15. Later, in July 2017, Rockwell used his discretion to grant Capriotti a phantom equity agreement. *See id.* at 25:6–18.

On September 28, 2017, PSB and Unlimited attorneys met with Capriotti to prepare her for a deposition in the Leighton lawsuit. *See id.* at 86:4–24. Rockwell spoke with Reich after the meeting and to Rockwell's disappointment was informed Capriotti was "elusive . . . she wasn't forthright about her knowledge, and that she continued to lie." *Id.* at 89:15–19. That evening Rockwell called and spoke to Capriotti multiple times. *See* Capriotti Dep. 182:24–184:8. Rockwell screamed obscenities at her, repeatedly called her a liar, and told her she had to get the company

out of the situation she put it in. *See id.* Capriotti testified, and Rockwell disputes, that he threatened to kill Capriotti's grandchildren if she refused to help. *See id.* at 293:1–23.

The next morning, Rockwell called Capriotti and asked her what she had "come up with" to fix the situation. *See, e.g.*, *id.* at 166:15–169:20; 172:8–11; 179:3–15. Capriotti testified Rockwell told her to make sure whatever information she provided was damaging of Leighton. *See id.* at 182:18–20. Capriotti also testified Rockwell wanted to "bury Rick," and "was going to throw him in jail," and if she did not help, Rockwell would "bring her down." *Id.* at 180:1–12. Rockwell never specifically gave Capriotti a lie to tell or asked her to lie under oath, but Capriotti perceived Rockwell's conduct as pressure for her to perjure herself in her deposition for the Leighton litigation. She testified that considering the circumstances—being granted phantom equity shares prior to her scheduled deposition, and after continuing to tell the truth Rockwell berated and threatened her—she believed he wanted her to lie under oath in her deposition. *See id.* at 169:13–20.

Capriotti then called Susan Manno, Insperity's human resource specialist, and reported Rockwell's harassment and threats. *See* Manno Dep. 45:24–46:23. Manno reported the incident to her superiors at Insperity. *See id.* at 47:12–14. Manno also spoke with Rockwell, who expressed his desire to fire Capriotti. Manno informed Rockwell that he was not an employee of record, was not under contract with Insperity, and did not have the authority to terminate Capriotti. *See id.* at 49:1–24. Rockwell then attempted to remove Manno from her position with PSB and Unlimited. *See id.* at 50:22–51:3; Rockwell Dep 100:12–16.

On October 10, 2017, Rockwell fired Capriotti. Rockwell contends he fired her because she was deceptive. *See* Rockwell Dep. 67:8–23. Capriotti testified she was fired because she refused to "make something up" for her deposition. Capriotti Dep. 196:22–197:23.

Manno did not learn of Capriotti's termination until after the fact when Capriotti reached

out to Manno regarding her status at the company. Manno stated PSB and Rockwell did not state

why they fired Capriotti. *See* Manno Dep. 90: 2–8. According to Manno, PSB and Unlimited did

not file a termination report properly. Associate General Counsel for Insperity stated in a

declaration that Rockwell is not an agent, employee, or representative of the Insperity Defendants,

and "Insperity Defendants did not make the decision to terminate the employment relationship

between Capriotti and PSB." Chaney Aff. ¶¶ 8, 10, ECF 44-5.

On July 18, 2019, Capriotti filed a Complaint asserting claims for wrongful discharge and

intentional infliction of emotional distress.[3] On June 26, 2020 Defendants moved for summary

judgment on the wrongful discharge claim. Defendants assert they are entitled to summary

judgment because Capriotti has failed to produce evidence that her termination violated the

Commonwealth of Pennsylvania's public policy. *See* Mot. for Summ. J. 3, ECF No. 44. Insperity

also argues it is entitled to summary judgment because it was not involved in Capriotti's

termination. The Court heard oral argument on the motion at the August 6, 2020, telephonic final

pretrial conference.

**DISCUSSION**

The Court will deny Defendants' motion for summary judgment in part and grant it in part.

The Court will deny Defendants' motion because there is a genuine dispute of material fact as to

whether Rockwell (on behalf of PSB) asked Capriotti to commit perjury, and whether he fired her

because she refused. The Court will, however, grant the motion for summary judgment insofar as

---

[3] In a January 7, 2020, Order, the Court dismissed Capriotti's intentional infliction of emotional
distress claim with prejudice. *See* Order, Jan. 7, 2020, ECF No. 15.

judgment will be entered in favor of Insperity because there is no evidence Insperity asked Capriotti to commit perjury and fired her because she refused.

A motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine" dispute is one where "the evidence is such that a reasonable jury could return a verdict for the [non-moving] party." Id.

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citation and internal quotation marks omitted). To defeat summary judgment, "the non-moving party must present more than a mere scintilla of evidence; there must be evidence on which the jury could reasonably find for the [non-movant]."[4] *Burton v. Teleflex, Inc.*, 707 F.3d 417, 425 (3d Cir. 2013) (alteration in original) (citation and internal quotation marks omitted).

The Court will deny Defendants' motion because Capriotti has produced sufficient evidence for a rational jury to find Rockwell asked her to commit perjury and fired her because

---

[4] On July 10, 2020, Capriotti filed a response in opposition to Defendants' motion in which she attached a self-serving affidavit explaining her deposition testimony and restating allegations made in the Complaint. Defendants argue the affidavit should be disregarded as a sham. *See Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 253 (3d Cir. 2007) ("[I]f it is clear that an affidavit is offered solely for the purpose of defeating summary judgment, it is proper for the trial judge to conclude that no reasonable jury could accord that affidavit evidentiary weight and that summary judgment is appropriate."). Because Capriotti survives summary judgment without consideration of her affidavit, the Court need not address this issue.

she refused to do so, in violation of the Commonwealth's public policy. Pennsylvania courts have long recognized that an employer may terminate an employee for any reason absent a contractual provision to the contrary. *See Weaver v. Harpster*, 975 A.2d 555, 562 (Pa. 2009). There are, however, exceptions to this general rule when "discharges of at-will employees would threaten clear mandates of public policy." *Id.* at 563 (citation omitted). Three categories exist where a violation of public policy has consistently been held to support a claim for wrongful discharge: (1) requiring an employee to commit a crime, (2) preventing an employee from complying with a statutorily imposed duty, and (3) discharging an employee when specifically prohibited from doing so by statute. *See Mikhail v. Pa. Organization for Women in Early Recovery*, 63 A.3d 313, 317 (Pa. Super. Ct. 2013).

Pennsylvania recognizes perjury as a crime. Specifically, "[a] person is guilty of perjury . . . if in any official proceeding he makes a false statement under oath . . . when the statement is material and he does not believe it to be true." 18 Pa. Cons. Stat. § 4902(a). If an employer requests an employee to commit perjury, and the employee is terminated for his or her refusal, then the termination would violate the public policy of the Commonwealth in requiring an employee to commit a crime. *See Quint v. Thar Process, Inc.*, No. 11-116, 2011 WL 4345925, at *12 (W.D. Pa. Sep. 15, 2011) (citing *Reuther v. Fowler & Williams, Inc.*, 386 A.2d 119, 121–22, n.6 (Pa. Super. Ct. 1978)).

It is undisputed Capriotti was an at-will employee. Therefore, she can only succeed if her termination violated the public policy of the Commonwealth. Capriotti argues her termination violated the public policy of the Commonwealth because she was fired because she refused to commit a crime. Capriotti argues the record shows Rockwell asked her to commit perjury in her upcoming deposition for the Leighton litigation, she refused by continuing to tell the truth, and she

was fired as a result. To succeed, Capriotti must produce sufficient evidence to establish (1) Defendants required her to commit perjury, (2) she refused to do so, and (3) she was fired because of her refusal. *See Hanson v. Gichner Sys. Grp., Inc.*, 831 F. Supp. 403, 407–08 (M.D. Pa. 1993) (discussing factual disputes on elements of wrongful discharge in violation of public policy claim). Additionally, Capriotti must establish the underlying conduct in which she was asked to engage actually violated Pennsylvania law. *See Clark v. Modern Grp. Ltd.*, 9 F.3d 321, 332 (3d Cir. 1993) (predicting that Pennsylvania courts would only recognize a wrongful discharge claim when the action the employer asks the employee to take actually violates the law).

Viewing the facts in Capriotti's favor, a reasonable jury could find she was fired because she refused to perjure herself in her upcoming deposition for the Leighton litigation. In July 2017, PSB's attorneys contacted Capriotti and asked her when she would be available for a deposition for the Leighton litigation. *See* Capriotti Dep. 202:8–12; Rockwell Dep. 86:11–19 (stating Capriotti was among the witnesses to be deposed in litigation). On September 28, 2017, she met with PSB's attorneys to discuss her upcoming testimony and prepare for the deposition. *See* Rockwell Dep. 86:15–19. Capriotti testified that in this meeting, although she did not provide any information damning of Leighton, she did provide information that she believed was truthful and transparent. *See, e.g.*, Capriotti Dep. 186:24–187:3.

Despite Capriotti's truthfulness, she testified Rockwell berated her for her responses, threatened her, and told her to "come up with" information damning of Leighton. *See, e.g.*, *id.* at 166:15–169:20; 172:8–11; 179:3–15. Capriotti testified that at one point, Rockwell told her "you're going to come up with something." *Id.* at 187:7–8. Rockwell's harassment of Capriotti continued for days. *See id.* 187:17–193:7. Capriotti persisted in her position that she could not

"make something up." *See id.* 186:16–187:3. Shortly thereafter, Capriotti was terminated. *See id.* 192:16–193:5.

These facts could lead a rational jury to conclude Capriotti's termination violated the Commonwealth's public policy because Rockwell fired her for refusing to commit perjury. The evidence here is largely based on competing testimony between Capriotti and Rockwell. As a result, a jury could discredit Capriotti's testimony and find she is not entitled to relief. In ruling on Defendants' motion for summary judgment, however, the Court must view the evidence in the light most favorable to Capriotti, not Defendants. Resolution of this factual dispute, whether Capriotti or Rockwell is to be believed, is for the fact finder. *See Paladino v. Newsome*, 885 F.3d 203, 209–10 (3d Cir. 2018) ("In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence." (citations omitted)). Here, because there is a factual dispute as to whether Rockwell requested Capriotti perjure herself in her upcoming deposition and fired her as a result, the Court will deny Defendants' motion for summary judgment. *Cf. Walton v. Ryan Aviation Corp.*, No. 85-7455, 1986 WL 9168, at *3 (E.D. Pa. Aug. 19, 1986) (denying summary judgment in a wrongful discharge claim because there was a factual dispute as to whether the employer terminated employees in violation of public policy).

Defendants make several arguments in support of their motion, none of which compels the Court to reach a different conclusion. Defendants first argue Capriotti is required to produce evidence that both she and Rockwell knew that the testimony she would give would be false. *See* Defs.' Mot. for Summ. J. 5–6. Defendants contend the elements of perjury must be analyzed from the criminal context. Although the Court agrees the statute defining perjury as a crime must be compared to Rockwell's request, Defendants rely upon the elements for suborning perjury in

arguing Rockwell was also required to know Capriotti's testimony would be false. *See id*. (stating "both the accused and the person to be *suborned* knew that the testimony sought was false, material, and to be used in actual or prospective litigation" (emphasis added)). In this case, the question is whether Capriotti's conduct, as contemplated by Rockwell's request, would have been a crime, not whether Rockwell committed a crime by allegedly inducing Capriotti to perjure herself. The crime Capriotti contends she was asked to commit is perjury, which only requires Capriotti to have known that her statement would have been false. *See Commonwealth v. Holston*, 211 A.3d 1264, 1271 (Pa. 2019) ("The elements of perjury are established if: (1) in an official proceeding; (2) under oath or affirmation to tell the truth; (3) the defendant made a false statement knowing it to be false; and (4) the statement was material to the matter then at issue.").

Next, although Defendants argue Capriotti admitted she was not asked to commit perjury or lie under oath, this argument fails to recognize that a reasonable jury could find Rockwell's harassment, threats, and other conduct in response to Capriotti's truthful statements was an attempt to have Capriotti perjure herself. The following exchange occurred in Capriotti's deposition:

> Q:    Now, am I right that throughout this litigation including here in this testimony you have never once said that Rick Rockwell or anyone affiliated with UTI ever told you to say a specific lie, something that was not true? Is that – is that – do you agree with me?
>
> A:    I would agree with that.
>
> . . .
>
> Q: Did anyone at UTI ever ask you to make a false statement under oath?
>
> A: No.

Capriotti Dep. 167:19–168:3; 199:19–21. Upon review of Capriotti's entire deposition, however, these select statements do not reflect the entirety of her testimony regarding Rockwell's conduct. Rockwell's harassment, threats, and continuous requests for Capriotti to "make something up"

after she stated she told the truth, may lead a rational jury to conclude Rockwell asked her to commit perjury. Capriotti's responses to Defendants' counsel's questions in their literal form, "hardly leads to the conclusion that [Rockwell] did not ask in some other way for [Capriotti] to lie" in her upcoming deposition in the Leighton litigation. *Hanson*, 831 F. Supp. at 407–08. Therefore, Capriotti's admission fails to show there is no dispute as to whether Rockwell asked her to commit perjury.[5] *See id.* (noting there was a factual dispute as to whether employer asked employee to lie despite employee's admission that employer did not ask him to perjure himself, lie, give false testimony, make a false statement under oath, or sign a false affidavit).

Defendants' next argument, that Capriotti's subjective reasonable belief that Rockwell asked her to commit perjury is insufficient to survive a motion for summary judgment, is equally unpersuasive. Defendants rely on *Clark v. Modern Group Ltd.*, in which the Third Circuit held "Pennsylvania will not recognize a wrongful discharge claim when an at-will employee's discharge is based on a disagreement with management about the legality of a proposed course of action unless the action the employer wants to take actually violates the law." 9 F.3d 321, 328 (3d Cir. 1994). In *Clark*, the employer fired the employee for his "objections to [the employer's] refusal to report as taxable income certain auto expense reimbursements to its executives on their 1990 W-2 withholding statements." *Id.* at 323. The Third Circuit stated, the employee "bears the burden of demonstrating [the employer's] refusal to report its executives' reimbursed auto expenses on their 1990 W-2 forms was indeed illegal under federal tax law." *Id.* Ultimately, the

---

[5] Defendants also argue Capriotti cannot prove materiality, a necessary element of perjury. The Court disagrees. Capriotti continuously testified Rockwell asked her for information "damning" of Leighton or information amounting to a "smoking gun." *See, e.g.*, Capriotti Dep. 168:23. Her testimony, if believed, would sufficiently lead a jury to the conclude her testimony in the upcoming deposition would have been material to the Leighton litigation. *See* 18 Pa. Cons. Stat. § 4902(b) (defining a statement as material if it could have affected the course or outcome of the proceeding).

Third Circuit determined the underlying requested conduct was not illegal and the employee's claim for wrongful discharge was not recognized in Pennsylvania. *See id.* at 332.

Defendants' reliance on this case is misplaced. The decision in *Clark* was premised on the employee's erroneous beliefs as to *the legality of the underlying conduct* he refused to perform. Here, there is no dispute as to whether the underlying requested conduct—lying under oath—is illegal. To compare this case to *Clark*, Capriotti must have refused Rockwell's requests because she had an erroneous belief that lying under oath is illegal when, in fact, lying under oath is not illegal. This is not the case. Rather, there is a factual dispute as to whether Rockwell *actually asked* Capriotti to perjure herself. Capriotti's belief is that Rockwell's conduct was an attempt to have her lie under oath in her upcoming deposition. A jury is to determine whether Rockwell's conduct actually amounted to a request for Capriotti to lie under oath. If the jury so determines, then Capriotti's belief as to the legality of that conduct is immaterial. *See id.* ("The creation of a cause of action based on an employee's reasonable belief *about the law* would leave a private employer free to act only at the sufferance of its employees whenever reasonable men or women can differ about the *meaning or application of a law governing the action* the employer proposes." (emphasis added)). Lying under oath is perjury, and perjury is "an actual violation of the law." *Id.*

Contrary to Defendants' next argument, Capriotti's admission that she deserved to be fired does not entitle them to summary judgment. Defendants argue Capriotti cannot establish causation because she admits there was a legitimate independent reason for her firing. *See* Defs.' Mot. 10. In cases where an employer fires an employee in violation of public policy, the employer will not be liable if it has a separate, legitimate reason for firing the employee. *See Field v. Phila. Elec. Co.*, 565 A.2d 1170, 1182 (Pa. Super. Ct. 1989). An employer need only proffer one legitimate reason for the termination to be entitled to summary judgment. *See Hanson*, 831 F. Supp. 3d at

408. In her deposition, Capriotti was questioned regarding the February 2017 meeting in which Rockwell and other executives approached her about her involvement with Leighton. While Capriotti watched segments of a video recording of the February 2017 meeting, she admitted she would have fired herself if she were in Rockwell's position. *See* Capriotti Dep. 65:15–24. She stated she would have understood if she were fired because, although she believed she was "doing the right thing for [PSB]," she still provided assistance to Leighton. *See id.* 66:16–21.

Although Capriotti admitted she deserved to be fired for helping Leighton in February 2017, she can still establish causation because she was not fired until nearly eight months later. Assuming Capriotti's disloyalty is a legitimate independent reason to fire her, a jury could find it is not the actual reason because she was retained as an employee for months after Rockwell became aware of her assistance to Leighton. Instead of firing Capriotti in February 2017, Rockwell retained her. After the Leighton litigation began, Rockwell appeared to reward Capriotti by granting her phantom equity shares in the company in July 2017. Then, in October 2017, after meeting with PSB attorneys regarding her upcoming deposition testimony, Rockwell's conduct which can be construed as an attempt to have Capriotti lie under oath, and Capriotti's refusal, she was fired. The timeline of events allows a reasonable jury to find Capriotti was terminated for refusing to lie under oath in her upcoming deposition in the Leighton litigation. Even if Capriotti "deserved" to be fired in February 2017, a jury may find that it does not explain why Capriotti was retained and only terminated after the events related to the Leighton litigation and her deposition. As a result, Defendants have not shown that they are entitled to judgment because they had a legitimate independent reason for firing Capriotti in October 2017, when she was in fact fired.

Turning to Defendants' final argument, because the Court agrees a reasonable jury could not find Insperity requested Capriotti to commit perjury or find Insperity terminated Capriotti for

her refusal to do so, the Court will grant Defendants' motion in part. As an initial matter, there is no evidence Insperity asked Capriotti to commit a crime. Insperity's Associate General Counsel stated in a declaration that "Rockwell is not an agent, employee, or representative of the Insperity Defendants," and "Insperity Defendants did not make the decision to terminate the employment relationship between Capriotti and PSB." Defs.' Ex. C, Chaney Aff. ¶¶ 8, 10, ECF 44-5. Capriotti has not produced any evidence to dispute this. Because there is only evidence that Rockwell requested Capriotti to commit perjury, a reasonable jury could not conclude Insperity did so. Further, Insperity was not a party to the Leighton litigation and did not have any stake in that case such that a jury could infer Insperity benefited from Rockwell's request for Capriotti's perjured testimony. Therefore, Capriotti cannot establish the first element of her claim against Insperity. *Cf. Brosso v. Devices for Vascular Intervention*, 879 F. Supp. 473, 477 (E.D. Pa. 1995) (dismissing a wrongful discharge claim when employee failed to allege that the employer asked the employee to commit a crime).

Also, Capriotti has not produced any evidence establishing that Insperity fired her because she refused to perjure herself. Insperity was a co-employer of Capriotti. Insperity, however, learned of Capriotti's termination after the fact. According to Manno, PSB and Rockwell provided no information regarding Capriotti's termination. *See* Manno Dep. 90:2–8 ("They didn't even file a termination report properly. Nothing was said. Nothing was said of why."). Insperity then completed the formal termination letter. Pursuant to the Client Services Agreement between Insperity and PSB, PSB is responsible for the direction and control over employees including the right to hire and terminate. Insperity only reserved a right to do the same. Upon review of Manno's deposition and the Client Services Agreement, it appears PSB was responsible for making decisions as to PSB employees but Insperity executed those decisions with the appropriate

paperwork and support. This evidence is insufficient to establish Insperity's involvement or reason for firing Capriotti. As a result, Capriotti's claim against Insperity fails.[6]

**CONCLUSION**

There is a genuine dispute of material fact regarding whether Rockwell asked Capriotti to commit perjury and whether he and PSB fired her because she refused to do so. There is no evidence, however, showing Insperity did the same. Accordingly, the Court will deny in part and grant in part Defendants' motion for summary judgment. Judgment will be entered in Insperity's favor only.

BY THE COURT:

 /s/ Juan R. Sánchez 
Juan R. Sánchez, C.J.

---

[6] Capriotti points to Insperity's approval of her termination without conducting an investigation regarding the reason for her termination. This is irrelevant. Capriotti must produce some evidence that her employer, Insperity, requested she commit a crime and fired her for her refusal to do so. She has not. Assuming Insperity had a duty to conduct an investigation of Capriotti's termination before completing her termination letter (and failed to fulfill that duty), Capriotti's claim for wrongful discharge is not the avenue to redress this concern.